In re Packer.

1. Habeas Corpus.

Jurisdictional questions only can be reviewed by habeas corpus proceeding. Parties aggrieved by any step that is merely erroneous are left to the usual remedy by writ of error.

2. Practice in Criminal Cases.

The better course, where cases are consolidated for trial, is, after the trial is over, to enter judgment in each case as if separate trials had been had.

3. Sentences—Statutory Construction.

Several convictions with separate sentences are, under and for the purposes of section 3453 Mill's Ann. Stats., to be construed as one continuous sentence. This section was adopted for the purpose of giving a convict committed under several convictions with separate sentences, a greater allowance for good conduct than he would otherwise be entitled to receive.

4. Same.

Under the statute, a convict committed under several convictions, with separate sentences of eight years each, is entitled to six months deduction for good conduct upon the sixth year of the first sentence, and every year thereafter.

5. Successive Penalties.

The district court has power to inflict successive penalties; and a sentence to a term of imprisonment, to commence *in futuro* at the expiration of an earlier term, is legal.

*Original Proceeding.*

Petition of Alfred Packer for a writ of habeas corpus.

At the April term, A. D. 1883, of the district court of Hinsdale county, the grand jury returned five separate indictments for murder against this petitioner. The cases were afterwards docketed in the district court, numbered respectively 237, 238, 239, 240 and 241. The indictments all charged that the offenses were committed by the prisoner in Hinsdale county, on the first day of March, 1874. In the first of these indictments he was charged with the murder of Israel Swan; in the second, with the murder of Shannon Wilson Bell; in the third, with the murder of Frank

Miller; in the fourth, with the murder of George Noon; and in the fifth, with the murder of James Humphrey.

At the same term of court to which the indictments were returned, the petitioner was put upon trial for the murder of Israel Swan. As a result of this trial a verdict of guilty as charged in the indictment was returned, the jury further finding that the killing was premeditated. Upon the verdict the prisoner was thereafter sentenced to be executed. Thereupon a writ of error was sued out from this court. As the result of the proceedings in this court, the judgment of the court below was reversed. The reversal being based upon the ground that the sections of the criminal code which authorized and prescribed the punishment for murder were repealed by the legislature, without a saving clause, after the crime was committed, but before the conviction complained of.

After that case had been remanded to the district court of Hinsdale county, all the causes were taken,.by a change of venue, to the county of Gunnison. In the county of Gunnison the causes came on for hearing at the regular July term, 1886, and upon the motion of the district attorney they were consolidated for trial. Thereafter the causes were called for trial and all submitted to one jury. As a result of that trial the jury returned the following verdict:

" We the jury find the defendant guilty of voluntary manslaughter as charged in the indictment for the killing of Shannon Wilson Bell, and we further find defendant guilty of voluntary manslaughter as charged in the indictment for the killing of George Noon, and we further find defendant guilty of voluntary manslaughter as charged in the indictment for the killing of Israel Swan, and we further find defendant guilty of voluntary manslaughter as charged in the indictment for the killing of Frank Miller, and we further find the defendant guilty of voluntary manslaughter as charged in the indictment for the killing of James Humphrey."

Motions for new trial and in arrest of judgment were

made and overruled. Thereupon the prisoner was sentenced as follows :

" Therefore it is ordered and adjudged by the court that the said defendant Alfred Packer, be taken from the bar of this court to the common jail of Gunnison county, from whence he came, and from thence by the sheriff of said Gunnison county, with all convenient speed, to the penitentiary of this state at Canon City, and be delivered to the warden or keeper of said penitentiary, and the said warden or keeper is hereby required and commanded to take the body of the said defendant Alfred Packer, and confine him in said penitentiary in safe and secure custody for and during one continuous term of forty (40) years from and after the delivery thereof, which said term is divided and made more specific as follows, to wit :

" Eight years for the voluntary manslaughter of Israel Swan, case No. 237, on the expiration of said term of eight years, eight further years for the voluntary manslaughter of Shannon Wilson Bell, case No. 238, at the expiration of, said last mentioned term, for the term of eight years additional for the voluntary manslaughter of Frank Miller, case No. 239, at the expiration of said last mentioned term, for the period of eight years additional for the voluntary manslaughter of George Noon, case No. 240, at the expiration of the said last mentioned term, for the period of eight years additional for the voluntary manslaughter of James Humphrey, case No. 241, at hard labor, and that he be thereafter discharged."

The prisoner having served out sentence in case No. 237, now applies to this court to be discharged upon habeas corpus from further imprisonment.

Mr. John R. Smith, for the petitioner.

Mr. Eugene Engley, attorney general, and Mr. H. T. Sale, for the People.

Chief Justice Hayt delivered the opinion of the court.

It is contended that the district court had no power to

order a consolidation of the five cases. It is to be noticed *in limine*, that only jurisdictional questions can be reviewed in this proceeding by habeas corpus, leaving the parties aggrieved by any step that is merely erroneous to the usual remedy by a writ of error. *Ex parte Farnham*, 3 Colo. 545.

Whether it was error to consolidate these cases for trial and submit them to one jury, are questions that are not properly before us upon this application. The district court having jurisdiction of the defendant, and jurisdiction of the offenses charged, when the application for the consolidation was presented, it had jurisdiction to determine that application. If it erred in its conclusion, such error in no way affected its jurisdiction. In other words, it had power to make an erroneous order as well as a correct one.

We do not understand counsel to contest this well established principle. They claim, however, the right to have reviewed in this proceeding the final judgments and the power of the court to enter the same, and say that incidentally the whole record is before us for the purpose of deciding whether the district court had power to enter the several judgments, and inflict the accumulated punishments ordered.

A specific objection made to this record is that it shows, as it is claimed, that the five cases were consolidated for trial under the number 237, and that in that case only was a trial had, and a verdict of guilty rendered, hence it is argued that but one judgment could properly be entered and but one sentence imposed. Without doubt, the usual and better course where cases are consolidated for trial is, after the trial is over, to enter judgment in each case the same as if separate trials had been had. *Parker v. People*, 13 Colo. 155.

An examination of the record in this case discloses that practically this result was reached by the district court. That the jury intended to and did convict the defendant for the five separate offenses as charged, is evident when we consider the verdict in connection with the five indictments. In the first indictment he was charged with the killing of Shannon Wilson Bell, and in the second, with the killing of

George Noon, etc.   The jury in their verdict find him guilty of voluntary manslaughter as charged in the indictment for the killing of Shannon Wilson Bell, and " we further find defendant guilty of voluntary manslaughter as charged in the indictment for the killing of George Noon," and like language is used with reference to the remaining three indictments.   There is no escape from the conclusion that the jury intended to and did by their verdict find him guilty upon each indictment.

The judgment is equally specific.   For, notwithstanding the fact that the sentence provides for imprisonment for a continuous term of forty years, this term is divided and made more specific as follows:

" Eight years for the voluntary manslaughter of Israel Swan, case No. 237, on the expiration of said term of eight years, eight further years for the voluntary manslaughter of Shannon Wilson Bell, case No. 238," and so on for the remaining three cases.   Considering the sentences in the light of the verdict and the indictments, they are free from uncertainty or ambiguity, the sentence in each case being for a term of eight years.

It is contended, however, that the court had no power to impose any sentence commencing to operate *in futuro*.   It is upon this claim that counsel really rely for the discharge of the defendant, the other points being urged simply for the purpose of showing that upon the record the court had no power to inflict any punishment after the first.

It is admitted that our statute does not in terms require sentence of imprisonment to commence *in presenti*.   There is in fact but one provision in all our statutes which bears directly upon this matter.   This provision reads as follows:

" That for the purposes of this act, whenever any convict shall have been committed under several convictions with separate sentences, they shall be construed as one continuous sentence."   Mills' Ann. Statute, sec. 3453.   This section was passed in 1876 as part of an act entitled, " An act to promote better discipline and encourage reformation in the

penitentiary." G. L. 1877, p. 684. The act provides for a deduction on the term of all sentences contingent upon the good behavior of the convict. The deduction specified being one month for the first year, two months for the second year, etc., until he becomes entitled to six months deduction for each year, which is the maximum deduction allowed. When read in the light of the existing law, and in connection with the entire act, it is clear that the section was passed for the purpose of giving a convict committed under several convictions, with separate sentences, a greater allowance for good conduct than he would otherwise be entitled to. As applied to Packer's sentences, the provision entitles him to six months deduction for good conduct upon the sixth year of the first sentence, and every subsequent year thereafter, while otherwise he would only receive one month's deduction upon the first year of each subsequent sentence, two months upon the second, etc., until the maximum of six months should be again reached.

The provision is only pertinent to the question under consideration in this case, in so far as it shows a legislative recognition of the power of the courts to commit under several convictions, with separate sentences. This can only be carried into effect by making each sentence, after the first, commence at the expiration of the previous sentence. This case well illustrates the anomaly that must esult from a decision to the effect that a sentence may not be enforced to commence to run upon the expiration of another. Under such a construction, the petitioner could only be punished for the felonious killing of four of his five victims in one of two ways, viz. :

First. After the expiration of the term of the first sentence, if not previously tried, he might have been held for trial for a second offense, and afterwards in the same manner upon the third and subsequent charges. In addition to the expense and inconvenience incident to such a course, the difficulty of obtaining witnesses after the lapse of several years would with us be an insuperable barrier to such a course.

Second. After several trials and convictions procured at one term, by deferring sentence in all cases save one, until the expiration of the prior sentence. This, if permissible, would necessitate taking the defendant a long distance from the place of confinement to the place of trial for each additional sentence. This would not only result in expense and inconvenience to the state, but would usually necessitate the fixing of the punishment upon the subsequent convictions by some judge other than the one who presided at the trial. And the defendant by the lapse of time between trial and judgment might also be deprived of his right to have the proceeding reviewed by an appellate court.

It has been suggested that the sentences should be made to run simultaneously. This would have the effect of nullifying all but one of them, a conclusion to which we cannot give our assent. The statute provides a punishment for each offense ; and the practice ought to be sustained, if permissible, whereby the punishment designated may be inflicted. The conclusion that one term of imprisonment may be made to commence when another terminates is not only supported by reason, but we think by the decided weight of authority, as will appear from the following citations. These include our ablest writers upon the criminal law, as well as adjudications by courts of acknowledged learning. *Parker v. People, supra ;* 1 Bishop's Crim. Procedure, (3d ed.) sec. 1327 ; Wharton's Crim. Plead. & Prac. (9th ed.) sec. 932 ; *State v. Smith,* 5 Day (Conn.) 175 ; *Kite v. The Commonwealth,* 11 Met. (Mass.) 581 ; *Brown v. The Commonwealth,* 4 Rawle (Pa.) 259 ; *Mills v. The Commonwealth,* 13 Pa. 631 ; *The Commonwealth v. Leath,* Va. Cases, 151 ; *Mims v. State,* 26 Minn. 498 ; *Ex parte Dalton,* 49 Cali. 463 ; *In re Haynes,* 30 Fed. Rep. 767 ; *Williams v. The State,* 18 Ohio State, 46 ; *Wilkes v. The King,* Brown's Parliamentary Cases, vol. 4, 360. See also article by Joel P. Bishop, vol. 3, Southern Law Rev. 51.

In the case of *Kite v. The Commonwealth, supra,* it is said : " The court are all of opinion that it is no error in a judgment, in a criminal case, to make one term of imprisonment

commence when another terminates. It is as certain as the nature of the case will admit; and there is no other mode in which a party may be sentenced on several convictions. Though uncertain at the time, depending upon a possible contingency that the imprisonment on the former sentence will be remitted or shortened, it will be made certain by the event. If the previous sentence is shortened by a reversal of the judgment, or a pardon, it then expires; and then, by its terms, the sentence in question takes effect, as if the previous one had expired by lapse of time. Nor will it make any difference, that the previous judgment is reversed for error. It is voidable only, and not void; and, until reversed by a judgment, it is to be deemed of full force and effect; and though erroneous, and subsequently reversed on error, it is quite sufficient to fix the term at which another sentence shall take effect."

In our opinion the authority of the district court to inflict successive penalties for the several convictions should be upheld. And it appearing by the warden's return that he now holds petitioner in confinement by virtue of the sentence pronounced upon the second conviction, the prisoner must be remanded.

*Petitioner remanded.*